MINUTEMAN PRESS
INTERNATIONAL,
INC. Plaintiff,

v.

William F. MATTHEWS and Anbam,
LLC, Defendants.

No. 99–CV–7247 DRH ARL.

United States District Court,
E.D. New York.

Nov. 13, 2002.

Quadrino & Schwartz, P.C., Garden City, NY by Evan S. Schwartz, for plaintiff.

Peter A. Kelly, New Haven, CT, for Defendants.

## DECISION AND ORDER

HURLEY, District Judge.

Plaintiff filed this action alleging that Defendants breached their Franchise Agreement ("Agreement") by failing to file royalty statements and make royalty payments. Currently before the Court is Plaintiff's motion for summary judgment. For the reasons that follow, Plaintiff's motion is granted.

## BACKGROUND

Many of the underlying facts are not in dispute. Plaintiff's Local Rule 56.1 Statement ("Pl's 56.1 Statement"), filed with the Court and served on counsel, has gone largely unchallenged; therefore, any facts not controverted by Defendants' Rule 56.1 Statement are deemed admitted. *Gadsden v. Jones Lang Lasalle Americas Inc.*, 210 F.Supp.2d 430, 438 (S.D.N.Y.2002) ("Courts in this Circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party."); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) ("We have affirmed the grant of summary judgment on the basis of uncontested assertions in the moving party's Local Rule 56.1 statement.").

Defendants executed this Agreement with Plaintiff on March 10, 1995. Pl's 56.1 Statement ¶ 3. Defendant Matthews "acknowledges reading [the Agreement], understanding it and being represented by counsel throughout the entire purchase, and at the time he signed the Franchise Agreement, on behalf of ANBAM and himself." *Id.* Prior to entering into this agreement, "Matthews received four uniform franchise offering circulars ('UFOCs') from representatives of [Minuteman], read them cover-to-cover, discussed them with his attorney and, specifically, read portions of the UFOCS [sic] regarding royalties." *Id.* ¶ 4. None of the documents provided to Defendants discuss a cap or guarantee on royalty fees. *Id.* ¶ 5.

With respect to any understandings, statements or representations not included in the Agreement, Section 22 of the Agreement states in pertinent part:

THIS AGREEMENT AND SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF CONTAIN THE ENTIRE AGREEMENT OF THE PARTIES. NO OTHER AGREEMENTS, WRITTEN OR ORAL, SHALL BE DEEMED TO EXIST, AND ALL PRIOR AGREEMENTS AND UNDERSTANDINGS ARE SUPERSEDED HEREBY. NO OFFICER, EMPLOYEE OR AGENT OF LICENSOR HAS ANY AUTHORITY TO MAKE ANY REPRESENTATION OR PROMISE NOT CONTAINED IN THIS AGREEMENT, AND LICENSEE AGREES THAT IT HAS EXECUTED THIS AGREEMENT WITHOUT RELIANCE UPON ANY SUCH REPRESENTATION OR PROMISE.... THIS AGREEMENT CANNOT BE MODIFIED OR CHANGED EXCEPT BY A WRITTEN

INSTRUMENT SIGNED BY ALL OF THE PARTIES HERETO.

*Id.* ¶ 7.

Included in the Agreement is a page with the caption "LICENSEE'S RATIFICATION." The second paragraph of this section states: "I have read and understand the foregoing License Agreement and understand that if I do not understand any terms of the License Agreement or if I do not understand any terms of this Acknowledgement of Receipt that I have the right to have my own attorney explain any terms of this Agreement to me;" *Id.* The parties' signatures appear at the bottom of this page.

Defendants stopped paying royalties and filing royalty statements in January, 1999 "and continue to withhold royalty payments and statements, after continuously doing so prior to January 1999, for the previous and continuous 44 months." *Id.* ¶ 9. During the time when Defendants were not submitting royalty statements or making royalty payments, they continued to operate the Minuteman franchise. *Id.*

Plaintiff filed this lawsuit in Suffolk County Supreme Court alleging three causes of action: Defendants' failure to pay royalty fees to Plaintiff; accumulated penalties for Defendants' failure to submit monthly gross billings and failure to pay royalty fees; and damages from Defendants' failure to make royalty payments up to and including March 2030, the expiration of the Agreement. Defendants removed the action to federal district court pursuant to 28 U.S.C. § 1441(a), and shortly thereafter filed an answer asserting both counterclaims and affirmative defenses of fraud, inadequate consideration, a violation of the Connecticut Unfair Trade Practices Act, and unjust enrichment. As explained by Defendants, however, "the core issues with which the [multiple] affirmative defenses and counterclaims concern

themselves are the issues of fraudulent inducement, along with failure of consideration." Defendants' Brief in Opposition at 6. Given that the allegations in the complaint and those in Defendants' responsive pleading are intertwined to the extent of being essentially "two sides of the same coin," the Rule 56 relief sought by Plaintiff consists of a declaration that Defendants have materially breached the Agreement and that Defendants' affirmative defenses and counterclaims are defective as matter of law.

## DISCUSSION

In ruling on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's function is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

The Court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002). The Court may not grant a motion for summary judgment "[i]f there is any evidence in the record from which a reason-

able inference could be drawn in favor of the non-moving party on a material issue of fact." *Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002).

### ANALYSIS

■ The first question this court must address is whether actions of the parties created a contract. Based on the New York choice of law provision in the Agreement, and the absence of any argument from Defendants, the court will apply New York law to this dispute.[1] Under New York law, "[t]he elements of a claim for breach of contract are (1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other; and (4) damages." *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 561 (S.D.N.Y.1985). Defendants' failure to deny the Plaintiff's allegations contained in their Rule 56.1 statement establishes the existence of a contract.

Plaintiff has also established, through Defendant Matthews' Deposition, that they performed their end of the contract. The Agreement specifies numerous obligations imposed on Plaintiff, including providing a suggested bookkeeping system, a Manual of Operations, printed materials and sample Yellow page advertisements. *See* Agreement ¶ 4(a),(b). According to Matthews, Plaintiff complied with these obligations. Matthews Deposition, pp. 159–60. Additionally, Plaintiff agreed to provide Defendants with forty hours of assistance from a field representative to help in the initial set up of the franchise. *See* Agreement ¶ 4(b)(iii). Defendants concede that Plaintiff provided these services. *See* Matthews Deposition at 159–60. Although Matthews in his affidavit states that the post start-up services provided by Plaintiff were "of negligible value," Affidavit of Wil-

liam Matthews ("Matthews Affidavit") ¶ 3b, this conclusory statement does not indicate that Plaintiff failed to fulfill its obligations under the Agreement. Further, Defendants do not cite any other evidence indicating how Plaintiff purportedly failed to perform its obligations under the Agreement. Therefore, Plaintiff has established their performance of the contract as a matter of law.

The next issue is whether Defendants breached the contract. The contract terms which are at issue are contained in Section 6 of the Agreement. Section 6 reads in pertinent part:

6. *Payments by Licensee*

In consideration of the grant of the license contained herein, Licensee shall pay to Licensor the following:

.    .    .    .    .

(b) A royalty fee equal to six percent (6%) of Licensee's total monthly gross billings as hereinafter defined.... Within ten (10) days after the end of each month, Licensee shall send to Licensor, a statement in a form approved by Licensor, signed by Licensee showing all orders placed at the Minuteman Press Full Service Printing Center, all merchandise sold, and all billings therefor during the month, accompanied by a royalty check in the appropriate amount.... In the event Licensee fails to deliver to Licensor, ... the royalty statement or royalty fee by the 10th day of the month following the close of the month for which the continuing royalty is due and payable, then such royalty statement or royalty fee shall be deemed late, and Licensor, at its discretion, may charge a penalty of up to $10.00 per day, or not to exceed the maximum permitted

---

1. The Court need not reach Plaintiff's argument of whether the choice of law provision of New York General Obligations Law § 5–1401(1) applies to this case.

by state law, for each day such royalty statement or royalty fee is late.

*Id.*

Defendants also admit that they stopped filing royalty statements and making royalty payments to Plaintiff, even though Defendants acknowledge that they were required, under the terms of the Agreement, to do so. This breach has led to Plaintiff's damages, in the form of uncollected royalty payments and penalties. Defendants' actions constitute a breach of the Agreement as a matter of law.

**Defenses to Contract**

### 1. *Fraud*

█ Defendants argue that they were justified in refusing to comply with the contract and that the contract should not be enforced. They argue that Plaintiff committed fraud in the inducement by making oral representations about a cap on the amount of royalty fees to be paid to Plaintiff. Specifically, Plaintiff was "led to enter into this contract by Mr. Pailes' [vice president and regional sales representative of Minuteman] representation that [he] would never have to pay more than $1,200 per month in royalties." Matthews Affidavit ¶ 6. Defendant alleges that he relied on this representation and found it "attractive to me and was relied upon by me in making my decision to enter into this business arrangement with Minuteman Press." *Id.* ¶ 4. This argument must fail.

When looking at the terms of a patently unambiguous contract, courts will not consider extrinsic evidence absent "a claim of fraud." *O'Hearn v. Bodyonics, Ltd.*, 22 F.Supp.2d 7, 13 (E.D.N.Y.1998) (citing *Marine Midland Bank–Southern v. Thurlow*, 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419–20, 425 N.E.2d 805 (1981)). This does not mean, however, that courts will go outside the terms of the contract whenever there is an allegation of fraud.

In this case, Defendants claim that Plaintiff's agents made oral representations about a cap on the amount of monthly royalty fees. However, any such representations cannot be reconciled with the clear language of Section 6 of the Agreement signed by Defendants, which contains no limitation on the amount of royalty fees. According to the plain language of the contract, Defendants are responsible for royalty fees in the amount of six percent of the total monthly gross billings; there is no floor or ceiling on this number.

In *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), the New York Court of Appeals addressed a case with a similar provision. In *Danann*, the defendant argued fraud in the inducement as a defense to a contract, claiming that plaintiff knowingly made several false oral representations to him in the sale of a lease of a building. *Id.* at 319, 184 N.Y.S.2d at 600, 157 N.E.2d 597. The relevant part of that contract contained language where the purchaser expressly acknowledged that "neither party [was] relying upon any statement or representation not embodied in this contract, made by the other." *Id.* at 320, 184 N.Y.S.2d at 601, 157 N.E.2d 597.

In evaluating that language, the court held that "[s]uch a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." *Id.* at 320–21, 184 N.Y.S.2d at 602, 157 N.E.2d 597. The court held that "[t]o hold otherwise would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representation of the seller as to a particular fact." *Id.* at 323, 184 N.Y.S.2d at 604, 157 N.E.2d 597.

Section 22 states that the written contract is the only agreement between the parties and that none of Plaintiff's agents had the authority to modify the agreement. Therefore, Defendants cannot claim fraud in the inducement based on alleged oral misrepresentations in the face of the clear and unambiguous language of Section 22. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 189 F.Supp.2d 24, 26 (S.D.N.Y.2002) (recognizing New York rule that "will not permit a sophisticated party that, in negotiating a contract, has expressly disclaimed reliance on specific oral representations extrinsic to the contract to thereafter claim that the fraudulence of these representations is a defense to contractual performance.").

### 2. *Inadequate Consideration*

Defendants' next argument is that the contract was supported by inadequate consideration. Consideration is "a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor." *Startech, Inc. v. VSA Arts*, 126 F.Supp.2d 234, 237 (S.D.N.Y.2000). The courts will not inquire into the adequacy of consideration absent evidence of fraud or unconscionability. *Apfel v. Prudential–Bache Secs. Inc.*, 81 N.Y.2d 470, 476, 600 N.Y.S.2d 433, 435, 616 N.E.2d 1095 (1993). "Under the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." *Id.* at 475, 600 N.Y.S.2d at 435, 616 N.E.2d 1095.

The Court's analysis in determining that Defendants breached this Agreement is controlling on this issue. The Plaintiff's actions in performance of the Agreement—undisputed by Defendants—establish, as a matter of law, that Defendants received a bargained for gain in the form of support services furnished by Plaintiff. *See Startech*, 126 F.Supp.2d at 236–37. In applying the minimal standard for determining the existence of consideration, there is no issue of material fact as to whether the Defendants received adequate consideration. Therefore, Defendants' affirmative defense on this ground is unavailing.

### Unconscionability

■ In Defendants' Response to the summary judgment motion, they allege that the terms of the Agreement are unconscionable. Federal Rule of Civil Procedure 8(c) states that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... any other matter constituting an avoidance or affirmative defense." *Id.* Plaintiff contends that since this defense was not raised in Defendants' answer, that it is deemed waived.

Under New York law, unconscionability is considered an affirmative defense. *See, e.g., Travelers Ins. Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 158 (S.D.N.Y. 1995); *Don King Prods. v. Douglas*, 742 F.Supp. 778, 780 (S.D.N.Y.1990) (recognizing unconscionability as an affirmative defense under New York law); *Towner v. Towner*, 225 A.D.2d 614, 615, 639 N.Y.S.2d 133, 134 (2d Dep't 1996). Defendants argue that Plaintiff waived their right to object to any affirmative defenses by failing to file a motion pursuant to Rule 12(b). This argument is rejected. Defendants have not shown how their waiver of any affirmative defenses by failing to comply with Federal Rule 8(c) is contingent on Plaintiff not filing a motion under Rule 12(b).

A review of the complaint reveals defenses and counterclaims for fraudulent inducement, failure of consideration, violation of Connecticut Unfair Trade Practices Act and unjust enrichment. Nowhere in the Defendants' answer, either in the form

of a defense or a counterclaim, do they allege that the Agreement was unconscionable. This defense was first mentioned in Defendants' opposition to Plaintiff's summary judgment motion. Since Defendants failed to raise this defense in their answer, and have provided no cause as to why it could not have been raised earlier, it is deemed waived and the Court will not consider this defense in deciding Plaintiff's motion for summary judgment. *See Mooney v. City of New York*, 219 F.3d 123, 127 n. 2 (2d Cir.2000) ("Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case.") (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 at 477 (2d ed.1990)), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1083, 148 L.Ed.2d 958 (2001).

## Defendants' Counterclaims and Affirmative Defenses

Defendants' answer contained four counterclaims and four affirmative defenses. However the subject matter, and concomitant allegations, of the counterclaims and of the affirmative defenses are essentially identical. For sake of simplicity, the Court will refer to the counterclaims in the discussion that follows, but with the understanding that what is said as to counterclaims is equally applicable to the affirmative defenses.

■ Defendants' counterclaims fail as a matter of law. Defendants' first and third counterclaims, fraudulent inducement and a violation of the Connecticut Unfair Trade Practices Act §§ 42–110a—42–110q, allege that the plaintiff committed fraud. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud ... the circumstances of the fraud ... shall be stated with particularity." This Circuit has held that when a complaint alleges fraud, it must identify and describe the statements made by a defendant alleged to be fraudulent, indicate where and when the statements were made, and explain why the alleged statements are fraudulent. *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir.1998) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996)). Defendants' first and third counterclaims do not meet this standard. Therefore, those counterclaims are dismissed, along with the corresponding first and third affirmative defenses.[2]

■■ Second, Defendants' claim of lack of consideration is necessarily defeated by this Court's determination, as a matter of law, that the parties entered into a valid contract and that the Defendants breached the Agreement. Finally, Defendants cannot maintain a claim of unjust enrichment for monies given to Plaintiff, since the source of the alleged unjust enrichment—royalty payments to Plaintiff—were contemplated by the terms of the Agreement. *See Clark–Fitzpatrick, Inc. v. Long Island Railroad Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precluded recovery in quasi contract for events arising out of the same subject matter."). Therefore, this claim must also fail. For the foregoing reasons, the second and fourth counter-

---

**2.** Based on the Defendants' failure to plead the third cause of action and corresponding third affirmative response with the requisite specificity, the Court does not address whether the Connecticut Unfair Trade Practices Act applies to this case. Presumably it does not, however, given the court's above determinations and Defendants' representation, as previously noted, that the "core issues" embodied in the current dispute are simply "fraudulent inducement" and "failure of consideration."

claims and affirmative defenses are dismissed.

The Court finds, as a matter of law, that Defendants entered into a valid enforceable contract with Plaintiff and that Defendants breached the terms of that contract by failing to submit monthly royalty statements and make monthly royalty payments.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED. The parties are directed to contact the Court on or before December 15, 2002 to schedule a trial on the issue of damages.

**SO ORDERED.**