In the Matter of HENRY R. WINTHROP, Petitioner, against SPENCER E. BATES et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, March 14, 1951.

*F. Walter Bliss* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General* and *John C. Crary, Jr.,* of counsel), for respondents.

HEFFERNAN, J.   On August 16, 1935, petitioner gave his daughter, Mrs. Alice W. Payne, $200,000, which he deposited to her account in the Chase National Bank.   On the same day he borrowed the identical sum from her and gave her a note payable five years after date with interest at 2%.   He paid a Federal gift tax of $8,250, on the gift in question.

The note matured on August 16, 1940, and a renewal note was given by him to his daughter for the amount of the loan payable three years after date with interest at 2%.

On November 12, 1941, petitioner agreed to increase the interest to 5% per annum in consideration of the fact that his daughter agreed to extend the maturity date of the note to August 16, 1945.   This agreement was indorsed on the back of the note.   Petitioner paid the major part of the note's principal sum in July, 1946.   It is conceded that interest on the note was paid regularly from the date of its inception.   Mrs. Payne testified that she received the interest payments and reported them in her 1941 and 1942 Federal and New York State income tax returns.   In so doing, she paid taxes on the interest.

On the audit of the petitioner's Federal income tax returns for 1942 and 1943, an issue was raised as to his right to deduct the interest payments.   Interest paid on the loan has been allowed by the Federal Income Tax Bureau for the years the loan was made.

There is not the slightest bit of proof in the record to justify an inference that the gift was subject to any private agreement between the father and daughter.   The uncontradicted evidence establishes the contrary.   The money which petitioner borrowed was used in his business for the production of other income.

The respondents disallowed the interest in computing petitioner's income tax for the years 1941 and 1942.   Section 360 of article 16 of the New York Tax Law provides:

" *Deductions.*

" In computing net income there shall be allowed as deductions:   *   *   *

" 2. All interest paid or accrued during the taxable year on indebtedness except interest referred to in paragraph f of section three hundred and fifty-nine of this chapter."

A similar provision is found in subdivision (b) of section 23 of the Internal Revenue Code (U. S. Code, tit. 26). The exception referred to in no way affects the right to the deduction of the interest paid on the note held by Mrs. Payne.

There is no evidence in the record to sustain the determination of the respondents that petitioner did not lose control of the gift which he made to his daughter.

The proof in the record before us justifies the conclusion that when petitioner borrowed the money from his daughter he incurred an indebtedness and thereafter paid interest on such indebtedness which is deductible under the provisions of the Tax Law heretofore quoted. The evidence on behalf of petitioner is uncontradicted and there is no reason for denying to it conclusiveness (*Hull* v. *Littauer*, 162 N. Y. 569).

The determination of the State Tax Commission is annulled on the law and facts, with $50 costs and disbursements and the payments of interest in the years 1941 and 1942 are allowed as proper deductions on petitioner's income tax returns for those years.

BREWSTER, J. (dissenting). The assessments in question resulted from the disallowance of certain deductions which petitioner had claimed on account of interest payments he had made on an indebtedness allegedly owed by him to his daughter and which was evidenced by his promissory note payable to her dated August 16, 1935, and renewals thereof.

The fact of the payments claimed as interest, the aforesaid indicia of the indebtedness, and the evidence of what gave rise to them are not in dispute. Whether the indebtedness was real is the question.

On August 16, 1935, petitioner deposited the sum of $200,000 in the Chase National Bank to his daughter's credit and it was so arranged that contemporaneously therewith the deposit was transferred back to him and he executed his aforesaid promissory note in the principal sum of the amount thereof. Thereafter, just when or by what particular means it does not appear, the note was delivered to her, and it and its renewals, as purported subsisting obligations, continued in her possession, and it was on account of them that petitioner made the payments which are in question.

The petitioner did not attend the hearings which have been held and has not testified. His contention is that through the process of the aforesaid transaction he consummated a gift of $200,000 to his daughter and incurred a genuine indebtedness

to her in the amount thereof. The only direct testimonial evidence as to this was given by the daughter, Mrs. Payne. Her first testimony was to the effect that there was no agreement between her and her father that she was to pay any part of the aforesaid principal sum, or the interest she received thereon, to him or expend any of it for his account, and that she used the interest payments for her personal account. This presumably referred to the situation after the note had been given. She further testified that the first talk she had with her father about his transfer of the $200,000 to her took place " probably a month or two " before it occurred. She was then asked and answered as follows: " Q. When you had this talk with your father about a month before the transaction, did he explain to you what he was going to do? A. He was going to invest it himself. Q. Invest what himself? A. The $200,000." In answer to further questions she indicated some haziness of recollection as to just what her father had said further regarding the matter, but when pressed for the substance of it she replied *that he was going to borrow the money to invest* — " that he could use it better than I could for investment purposes." Then, at the conclusion of her testimony she was asked, and made answer as follows: " Mr. Morrow: * * * in this talk you had with your father before the transfer of these funds, did he explain to you the purpose for which he was making this gift? Mrs. Payne: So that I would have my own income. Mr. Morrow: He told you at that time that he would borrow the money back and pay you interest which would give you an income? Is that correct? Mrs. Payne: Yes."

Respondents' determination is based upon a finding of fact that: " * * * all acts in the inception of the matter were performed at the same time and as prearranged by taxpayer and his daughter * * * as a part of one transaction "; and that the petitioner, " * * * did not lose control of his alleged ' gift ' nor did Mrs. Payne have possession of it free from an agreed obligation to immediately return it to him." This finding is amply supported by evidence. Under it respondents could have reasonably inferred and found the fact, as in substance they did, that in making the aforesaid deposit to the credit of his daughter, petitioner did not lose dominion and control over it, but rather that it was made conditional upon its being immediately turned back to him for investment purposes of his own, not the donee's, the transaction to be then evidenced by his promissory note, so that, *without the condition aforesaid the deposit to the daughter's credit would not have been made.*

Such being the nature of the transaction no gift was consummated and no real indebtedness was incurred. It is well settled that to constitute a valid gift there must be an unconditional delivery of what is given and a complete divestiture of the donor's title under such circumstances that the donor parts with all dominion and control over the subject matter of the gift. (*Gannon* v. *McGuire*, 160 N. Y. 476, 481; *Beaver* v. *Beaver*, 117 N. Y. 421; *Martin* v. *Funk*, 75 N. Y. 134, 137; *Johnson* v. *Commissioner of Internal Revenue*, 86 F. 2d 710). Since there was no executed gift petitioner's promissory note lacked consideration, created no lawful indebtedness and could not of itself be the subject matter of a gift. (*Holmes* v. *Roper*, 141 N. Y. 64; *Fink* v. *Cox*, 18 Johns. 145.)

I have not been unmindful of the probative force of the evidence as to the conduct of the parties after the note was given, viz.: petitioner's payment of a Federal gift tax, the daughter's payment of personal income taxes on the payments which she received as interest, and petitioner's payment of the major part of the note's principal sum by his transfer to her of his Long Island residence estate. But here we are dealing with the factual question. Insofar as this evidence bears upon a ratification of the gift transaction the trier of the facts might have found that it overcame that which disclosed its imperfection in its initial occurrence. But I do not think we may say they were obliged to do so. The respondents could have considered that the payment of the taxes reflected a mistaken obeisance to a form of affairs which lacked legal substance and reality, and that the transfer of the Long Island property was, or eventuated, as the principal subject matter of the original imperfect gift transaction on August 16, 1935. It all gets back as to the true nature of that day's occurrence. Our review is a limited one. We may not disturb the determination " unless clearly shown to have been erroneous " (*People ex rel. Hull* v. *Graves*, 289 N. Y. 173, 177), and in *Matter of Calder* v. *Graves* (261 App. Div. 90, 94–95, affd. 286 N. Y. 643), it was pointed out: " If there are any facts to sustain the decision so as to indicate that it was not arbitrary or capricious, we are required to confirm." Fairly interpreted the evidence is that petitioner wished to arrange an income for his daughter. To do so he deposited $200,000 to her credit to be returned to him as a loan for his own use and to be evidenced by his note, wherefrom the yield in the form of interest would constitute her income. I have not overlooked the rule that the donor's repossession from the donee of the thing given in and of itself does not

render the gift imperfect. But, of course, such repossession must follow a complete and utter divestiture of title and an appropriate and unconditional delivery. Such a delivery is crucial. When made with intent to part with title it is what works the divestiture and perfects the gift. Thus the repossession may not be the result of the performance of a condition of the delivery. Here the evidence, I believe, sustains respondents' finding that petitioner's delivery was not unconditional; that his immediate repossession of the fund deposited to his daughter's credit was in fulfillment of his requirement that it be done as a condition upon which the deposit was made. The daughter so testified in substance. Certainly her '' loan '' back of what had been thus '' given '' represented no arm length dealing on her part. Evidence sustains the finding that it never became hers to do with as she might choose and free from the condition her father imposed.

The determination should be confirmed.

FOSTER, P. J., and COON, J., concur with HEFFERNAN, J.; BREWSTER, J., dissents, in an opinion in which BERGAN, J., concurs.

Determination of the State Tax Commission annulled on the law and facts, with $50 costs and disbursements and the payments of interest in the years 1941 and 1942 allowed as proper deductions on petitioner's income tax return for those years.